UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| K. Tausif Kamal, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Baker Tilly US, LLP,<br><br>  Defendant. | Case No. 21-cv-1549 (MJD/DTS)<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Defendant Baker Tilly US, LLP (Baker Tilly) moved to strike or dismiss Plaintiffs' class allegations arguing, among other things, that individual issues will predominate. [Dkt. No. 98] Plaintiffs oppose the motion, arguing common evidence or an inference of reliance will suffice to meet the requirements for class certification. Because it is apparent from the pleadings that individual issues will predominate, the Court recommends Baker Tilly's motion [Dkt. No. 98] be granted.

## FINDINGS OF FACT

The Court has recounted the underlying facts of this case previously and adopts those recitations by reference. *See* Mem. of Law & Order on Mot. to Dismiss, at 2-19; Dkt. No. 80. Plaintiffs K. Tausif Kamal and Samuel Edison purported to sue Baker Tilly and Deloitte, LLP on behalf of themselves and those similarly situated for (1) negligence, (2) aiding and abetting fraud, and (3) aiding and abetting breach of fiduciary duty. Am. Compl. Dkt. No. 55. The Defendants moved to dismiss the Complaint, and the Court granted in part and denied in part that motion. Dkt. No. 80. All claims against Deloitte

were dismissed. *Id.* One claim remains against Baker Tilly: negligence relating to representations made about non-party Aspirity's 2015 10-K. *Id.* at 25.

In short, Plaintiffs and the purported class of approximately 800 others all purchased or renewed notes from Aspirity after July 1, 2015. The noteholders were never paid back and Aspirity declared bankruptcy in 2017. Plaintiffs now claim that Aspirity's auditor, Baker Tilly, falsely certified Aspirity's 2015 10-K. They contend Baker Tilly knew of red flags raising doubt about Aspirity's financial health, including the legitimacy and collectability of outstanding loans, but did not disclose those doubts appropriately in the 10-K including through a going concern qualification. In support of their claim, Plaintiffs note that the 10-K failed to identify a debt acquired during a 2015 restructuring. Am. Compl. at 96, 100, *passim*; Dkt. No. 55.

Baker Tilly now moves to dismiss or strike from the Amended Complaint all class allegations. Mot. to Strike or Mot. to Dismiss; Dkt. No. 98. They argue a class cannot be certified because, among other reasons, individual issues will predominate. In particular, Baker Tilly claims each individual member of the class will have to present evidence that they relied on the Baker Tilly-audited 10-K, failing Rule 23(b)(3)'s dictates. Mem. of Law in Support of Baker Tilly's Motion to Strike or Dismiss Class Allegations [Def. Mem.] at 3-12; Dkt. No. 100. Plaintiffs disagree. They contend class certification is possible, because they can prove "indirect reliance" through common evidence or through "a legitimate inference of reliance based on the nature of the alleged misrepresentations." Pl.'s Opp to Baker Tilly US, LLP's Motion to Strike or Dismiss Class Allegations [Pl. Mem.] at 13; Dkt. No. 116.

**CONCLUSIONS OF LAW**

**I.      Legal Standard**

Courts may strike pleadings under Federal Rule of Civil Procedure 12(f) for being "insufficient . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although striking a pleading is disfavored, courts' discretion to do so is liberal. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021). Where "a portion of the complaint lacks a legal basis," striking may be appropriate. *Id.* (citing *BJC Health Sys v. Columbia Cas. Co.*, 478 F.3d 908, 916-18 (8th Cir. 2007)).

In the Eighth Circuit, a court may grant a motion to strike class allegations even before plaintiffs have filed a motion to certify the class, because allowing "unsupportable class allegations" is both impertinent and contrary to the interests of judicial economy. *Donelson*, 999 F.3d at 1092. Where it is "apparent from the pleadings that the class cannot be certified," striking the class allegations is proper. *Id.*

Class certification requires the Plaintiff to demonstrate

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the mandates of Rule 23(a), a class action must fall within one of three categories of class actions. *Id.* at 23(b)(1-3). Plaintiffs seek certification under 23(b)(3), which provides for class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class is superior to other available methods for fairly and

3

efficiently adjudicating the controversy."[1] Fed. R. Civ. P. 23(b)(3); Am. Compl. at 35; Dkt. No. 55. This requirement ensures "proposed class members are sufficiently cohesive to warrant adjudication by representation." *In re Zurn Pex Plumbing Prods. Liab. Lit.*, 644 F.3d 604, 618 (8th Cir. 2011) (quoting *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This inquiry is limited to whether, "common evidence could suffice to make out a prima facie case for the class." *Id.* (internal citations and quotation marks omitted); *see also Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If . . . the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question."). The court must examine "the underlying elements necessary to establish liability for plaintiffs' claims." *Id.* at 569. "[O]nly if those elements can be proved on a systematic, and class-wide basis" is predominance met. *Id.* Predominance is a qualitative, rather than a quantitative question; that there is "*a* common question" is not dispositive. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016).

The Eighth Circuit has repeatedly explained that fraud cases are often unsuitable for class certification precisely because there are individual reliance issues in such cases. *In re St. Jude Med. Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies

---

[1] Plaintiffs also originally sought certification under 23(b)(1)(A), which provides certification if "prosecuting separate actions by or against individual class members would create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." *See* Am. Compl. at 35; Dkt. No. 55. They have withdrawn this basis for class certification. Pl. Opposition to Baker Tilly, US LLP's Motion to Strike or Dismiss Class Allegations (Pl. Opp.) at 34, n. 9, Dkt. No. 116 ("Plaintiffs agree they may not maintain a damages class under Fed. R. Civ. P. 23(b)(1)(A), but reserve the right to argue that this section may be applicable in the event the court opts to create subclasses.").

among individuals concerning what representations were received, and the degree to which individual persons relied on representations, fraud cases are often unsuitable for class treatment.") (citing Fed. R. Civ. P. 23 advisory committee's note); *Johannesohn v. Polaris Indus. Inc.*, 9 F.4th 981, 985 (8th Cir. 2021) (upholding denial of class certification where defendant presented evidence challenging some plaintiffs' reliance on the alleged misrepresentations and stating "fraud cases are ill-suited for class actions"); *see also In re Zurn Pex Plumbing Products Liab. Lit.*, 644 F.3d 640, 619 (8th Cir. 2011); *Blades v. Monsanto*, 400 F.3d at 566. Other courts have held similarly. *E.g., CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) ("[I]n cases arising from fraud, a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on a plaintiff's alleged reliance on that misrepresentation. Put simply, causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct.")

Baker Tilly argues that certification under 23(b)(3) is improper because individual issues will predominate, precluding class certification. At bottom, Baker Tilly claims that individual evidence will be required to prove the reliance element of Plaintiffs' negligent misrepresentation claim. Def. Mem. of Law in Support of Baker Tilly US, LLP's Motion to Strike or Dismiss Class Allegations (Def. Mem.) at 6-12; Dkt. No. 100.

### A.   Negligent Misrepresentation: Causation and Reliance

Minnesota has adopted the Restatement (Second) of Torts § 552 for liability to third parties who rely on an accountant's allegedly negligent audit. *See Bonhiver v. Graff*, 311 Minn. 111, 122 (Minn. 1976). To prove such a claim under the Restatement, the plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) the

5

defendant supplied false information to the plaintiff; (3) the plaintiff justifiably relied on that information; and (4) the defendant failed to exercise reasonable care in communicating the information. *Williams v. Smith*, 820 N.W.2d 801, 815 (Minn. 2012) (citing *Bonhiver*, 311 Minn. at 122.); *see also TCF Banking and Sav., F.A. v. Arthur Young & Co*, 706 F. Supp. 1408, 1418 (D. Minn. 1988) (analyzing *Bonhiver*). Thus, a plaintiff must demonstrate not simply that they suffered a loss, but that the loss resulted from their own justifiable reliance on information from the auditor.

As a threshold matter, the parties appear to disagree about how reliance and causation fit into the analysis of a negligent misrepresentation claim. Plaintiffs contend that the Aspirity Notes would not have been available for sale or renewal but-for Baker Tilly's audit. Pl. Mem. at 12; Dkt. No. 121. According to Plaintiffs, Aspirity's former chief executive will testify that, had Baker Tilly issued a going concern warning in connection with the 2015 10-K, Aspirity would have ceased selling the Notes. Plaintiffs claim therefore, that "[e]very individual who purchased or renewed a note after Baker Tilly's 2015 audit report was released [] necessarily did so in reliance on the information Baker Tilly supplied in that report." *Id.* Plaintiffs appear to argue that because there was allegedly but-for causation—but-for Baker Tilly's audit the Notes would not have been available—there was also reliance.

However, the analysis runs in the other direction. The Restatement's causation element requires proof of reliance, not the other way around. The law interpreting this provision also comports with tort law in general: but-for causation on its own is insufficient to establish liability for negligent misrepresentation under the adopted Restatement provision, which requires a showing of proximate cause. *See Sedco Intern. S.A. v. Cory*,

6

522 F. Supp. 254, 329 (S.D. Iowa, 1981) (explaining plaintiff is allowed to recover for losses because they were proximately caused by the defendant's misrepresentations), *aff'd*, 683 F.2d 1201 (8th Cir. 1982); *Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45, 49 (Minn. 1989) (assessing defendant's argument that the alleged misrepresentation was not the proximate cause of plaintiff's loss); *Carey v. Shiley, Inc.*, 32 F. Supp. 2d 1093, 1101 (S.D. Iowa, 1998) ("A negligent misrepresentation claim requires proof that the negligently supplied information was a proximate cause of the plaintiff's damage.") (citing Restatement (Second) of Torts § 552).

The Minnesota Supreme Court illustrated this concept in *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 4 (2001). In that case, health management organizations (HMOs) sued multiple cigarette manufacturers to recover costs incurred from increased health care services the HMOs provided because of tobacco-related illnesses. *Id.* The court was asked whether plaintiffs must prove reliance to recover damages under certain Minnesota consumer protection statutes. *Id.* The court clearly held the HMOs must "prove reliance by their members . . . in order to prove their damages were *caused by* defendants' conduct." *Id.* at 13 (emphasis added). The court further explained that "where, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the [law], as a practical matter, *it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the [law].*" *Id.* at 13, 14 (referring to reliance as one "component" of causation). Proof of reliance in such a case is thus a necessary predicate to proving causation.

Other cases also demonstrate this principle. In *In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008), the Eighth Circuit overturned class certification where the defendants presented evidence that some plaintiffs had not received, let alone relied on, any misrepresentation. Without reliance, the defendants could not have caused plaintiffs' harm. *Id.* at 839 ("Whether each plaintiff even received a representation from St. Jude about the efficacy of the heart valve is likely to be a significant issue in each case of alleged liability.") Similarly in *Runia*, 437 N.W.2d 45, plaintiff alleged negligent misrepresentation on the part of an insurance broker who informed plaintiff's father that the subject snowmobile policy covered the plaintiff. Plaintiff suffered injury while snowmobiling but was unable to recover under the policy, it having never covered her to begin with. *Id.* at 47. Plaintiff's father testified he would not have allowed his daughter to use his snowmobile if he had known the policy did not cover her. Because plaintiff's father relied on the misrepresentation about his daughter's coverage, that misrepresentation was the proximate cause of her inability to recover from the insurance company, the court concluded. *Id.* at 47-49 (affirming the trial court's findings).

Here, Plaintiffs claim they have demonstrated the causation element of a negligent misrepresentation claim because but-for Baker Tilly's audit, Aspirity would not have sold the Notes. As noted, however, that is not enough to prove causation in this case. Plaintiffs must also demonstrate Baker Tilly's alleged misrepresentations were the *proximate cause* of Plaintiffs' injuries because Plaintiffs *relied* on Baker Tilly's statements. *See id.* As in *Runia*, where Plaintiff presented evidence that she and her father had relied on the defendant's statements, the Plaintiffs here must do the same. *Id.* at 49. This will necessarily require individual evidence from each plaintiff to demonstrate that they (1)

8

read the 10-K and then (2) relied on the 10-K's information in deciding to purchase a Note from Aspirity. Furthermore, as explained below there is already evidence of "divergent degrees of reliance" among members of the purported class. *Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493 (8th Cir. 1983) (upholding denial of class certification because of individual issues).

Nor is *Bonhiver* particularly helpful to Plaintiff in this case. 311 Minn. 111. In *Bonhiver* the court acknowledged that indirect reliance through an agent was sufficient under part (a) of the Restatement. *Id.* at 303 (citing Restatement (Second) of Torts § 552). That is, the court held that indirect reliance may suffice to establish the plaintiff as "one of the persons for whose benefit and guidance" the information was supplied. Restatement (Second) of Torts § 552(a). That is a different question than what the Court addresses here, where there is no similar agency relationship as that found in *Bonhiver*. Plaintiffs do not contend that Baker Tilly was their agent, nor do they argue that Aspirity, through whom they received Baker Tilly's allegedly false representations, was either. While the *Bonhiver* decision adopted the applicable provision of the Restatement, its usefulness here is otherwise limited.

### B.     Inference-of-reliance cases are inapposite

Plaintiffs argue they will be able to prove reliance as a class through "a legitimate inference of reliance based on the nature of the alleged misrepresentations at issue." Pl. Mem. at 13; Dkt. No. 116. Though Plaintiffs are correct that in certain circumstances an inference of reliance arises, those circumstances are not present here. *See CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076 (10th Cir. 2014); *In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013); *Sandwich Chef of Texas Inc. v. Reliance Nat'l*

*Indem. Ins. Co.*, 319 F.3d 205 (5th Cir. 2003). In short, those cases all involve some "circumstantial evidence that can be used to show reliance is common to the class." *CGC Holding*, 773 F.3d at 1090 (internal citations omitted).

For example, in *CGC Holding* a class of plaintiffs alleged defendants defrauded them by offering them loans and extending loan agreements that required plaintiffs to pay a nonrefundable "loan commitment fee," only to never fund the loan because of some "defect" the lender found in the borrower's loan application. *CGC Holding*, 773 F.3d at 1082-83. The court inferred plaintiffs' reliance on defendants' statement based on the plaintiffs' payment of the loan commitment fee. "[T]he fact that a class member paid the nonrefundable up-front fee in exchange for the loan commitment constitutes circumstantial proof of reliance on the misrepresentations and omissions regarding [defendants'] ability or intent to actually fund the promised loan." *Id.* at 1091. And importantly, that circumstantial proof was common to the entire class; each class member paid this upfront fee. *Id.*

Similarly, in *U.S. Foodservice*, the Second Circuit explained that payment may constitute circumstantial proof of reliance in cases of fraudulent overbilling because it is reasonable to infer "that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." 729 F.3d at 119. That each member of the class paid an inflated invoice in that case constituted common evidence of reliance. *Id.* at 120.

In *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D.227 (W.D. Ark. 2018), defendant solicited donations for its work in South Asia, allowing donors to specify how they wanted their donations to be spent. For example, online donors were offered 179 donation

10

categories to direct their monies. *Id.* at 232-33. Plaintiffs claimed that while defendant represented that 100% of funds received for a specific purpose were sent to the field and used for that purpose, defendants did not abide by that representation. *Id.* at 233. The court rejected the notion that evidence of each class member's individual reliance on the misrepresentations would predominate because "in certain types of consumer fraud cases . . . reliance could be proven by class-wide proof and [] it was logical to infer that the class members relied on similar representations made by defendants." *Id.* at 239. In *Murphy*, such common proof existed: each putative class member identified a specific purpose for their donation as offered by the defendant and the defendant uniformly and repeatedly claimed that 100% of those funds would support the chosen purpose. *Id.* at 240-41.[2]

The facts in this case diverge significantly from *U.S. Foodservice, CGC Holding*, and *Murphy*. Here, the alleged fraud is at least one step removed from the financial transaction at issue. Plaintiffs bought or renewed Notes from Aspirity, not Baker Tilly. While Baker Tilly audited Aspirity, there was no uniform action (like paying an inflated invoice or a non-refundable loan fee) that reasonably demonstrates the entire class relied on or even knew about Baker Tilly's certification of the 10-K. This case is also unlike *Murphy* where all of the class members took a common action—choosing a specific purpose for their charitable donation—which could reasonably indicate they relied on the

---

[2] Plaintiffs argue in a footnote that *Zurn Pex* supports the position that "common evidence can suffice to make out a prima facie case for the class." Pl. Mem. at 13, n. 4; Dkt. No. 116. But *Zurn Pex* specifically explained that common evidence may suffice in "warranty and negligence claims premised on a universal and inherent product defect . . . because there is *no* [] individual reliance requirement for such claims." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 619 (emphasis added).

11

defendant's representations. Here, merely purchasing (or renewing) an Aspirity Note tells nothing about why each plaintiff did so and does not indicate their knowledge of or reliance on the Baker Tilly-audited 10-K. An inference of the entire class's reliance is inappropriate in the circumstances of this case.

This case is more akin to the circumstances in *Sandwich Chef*, wherein the Fifth Circuit held that class certification was improper even where plaintiffs presented evidence of inflated invoices, similar to those in *U.S. Foodservice*. *Sandwich Chef of Tex., Inc. v. Reliance Nat'l. Indem. Ins. Co.*, 319 F.3d 205 (5th Cir. 2003). While the plaintiffs all may have paid inflated rates, there was evidence the premiums for the subject workers' compensation insurance policies were individually negotiated and that some plaintiffs were aware of the inflated rates. *Id.* at 220. Thus, even where plaintiff policyholders all paid inflated premiums, a reliance inference was inappropriate. *Id.* The same could be said in this case, where personalized evidence would be necessary to demonstrate each plaintiff was aware of Baker Tilly's certification of the 10-K and that they placed weight on that certification in buying or renewing their Notes.

The Eighth Circuit made a similar point in *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981 (8th Cir. 2021), upholding the district court's denial of class certification in a products liability case based on evidence that called into question whether each individual plaintiff had truly relied on the alleged omissions. Similarly, in *In re St. Jude Inc.*, 522 F.3d 836 (8th Cir. 2008), the court explained that evidence that individual physicians had not relied on the alleged misrepresentation made regarding the medical device weighed against class certification. Furthermore, because the doctors in the case all learned about the device through different means the court reversed class certification, explaining that

"[a]ny trial thus would require physician-by-physician inquiries into doctor's sources of information about the valve." *Id.* at 839. In short, it is apparent that questions of individual reliance on the alleged misrepresentation will predominate and that, as a result, a class cannot be certified here. Accordingly, the motion to strike the class allegations should be granted.[3]

Defendants have also argued the class allegations should be stricken because (1) choice of law conflicts will make class adjudication impracticable; (2) one of the named plaintiffs has no cognizable claims; and (3) an arbitration clause applies to the class members, precluding certification. Because the Court has determined it is "clear from the pleadings that a class cannot be certified," it declines to address Defendant's other arguments here. *Donelson*, 999 F.3d at 1092

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:  Defendant's Motion to Strike Class Allegations [Dkt. No. 98] be **GRANTED** and the class allegations in the Amended Complaint [Dkt. No. 55] be stricken.

Dated: March 15, 2023                                  ___s/David T. Schultz__
                                                       DAVID T. SCHULTZ
                                                       United States Magistrate Judge

---

[3] Though it is not necessary to the Court's disposition of the motion, Baker Tilly has nonetheless identified evidence similar to that seen in *Johannesohn* and *St. Jude* suggesting class members may not have relied on its audit and certification of the 2015 Aspirity 10-K. Def. Mem. at 11. Some purported class members told the press they were "kicking themselves for not taking a harder look at the company's public filings." Jeffrey Meitrodt, *Investors Fight Back Against Firm Owned by Former Star Wrestler Timothy Krieger*, Star Tribune, April 30, 2018, https://www.startribune.com/investors-fighting-back-against-firm-owned-by-former-star-wrestler-timothy-krieger/481110521/. One investor flatly stated that he "didn't keep up with their business or what they were doing." *Id.* These types of statements suggest at least some of the purported class members may have trouble proving Baker Tilly's statements were the proximate cause of their loss.

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).